HAROLD J. PANZER and MARY LOU PANZER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Panzer v. Commissioner
Docket No. 3840-73
United States Tax Court
T.C. Memo 1975-304; 1975 Tax Ct. Memo LEXIS 67; 34 T.C.M. (CCH) 1329; T.C.M. (RIA) 750304; October 6, 1975, Filed Edward E. Hannon, for the petitioners. Robert J. Murray, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies of $12,661.83 and $13,945.38 in the Federal income tax of petitioners for the taxable years 1969 and 1970, respectively. The issues for decision are: (1) The fair market value of a medical clinic in Bassett, Nebraska, on December 1, 1968, when it was conveyed by petitioners to a charitable organization; (2) The fair rental value of the medical clinic which petitioner used for his medical practice during 1969 and 1970. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Petitioners Harold J. and Mary Lou Panzer, husband and wife, resided *68 in Ainsworth, Nebraska, when they filed their petition. They filed joint Federal income tax returns for each of the taxable years 1969 and 1970 with the Director, Internal Revenue Service Center, Kansas City, Missouri. Mary Lou Panzer is a party to this action solely by reason of having filed joint Federal income tax returns with Harold J. Panzer, hereinafter petitioner. Petitioner, a medical doctor, was engaged in the general practice of medicine in Bassett, Nebraska, from approximately 1940 until November of 1971 when he transferred his medical practice to Ainsworth, Nebraska. Bassett is in the north central part of Nebraska in what is commonly referred to as the Sand Hills region. The population of Bassett in 1968 was approximately 1,000. Ainsworth is approximately 17 miles west of Bassett and is comparable in size. Prior to December 1, 1968, petitioner owned certain real property which was improved by a building constructed in 1940 for use as a hospital. The building was used as a hospital from 1940 until 1961 when a new hospital was constructed in Bassett. Petitioner used the building as a medical clinic from 1961 until November 1971. The building has been vacant since 1971. *69 On or about September 1, 1963, petitioner and Dr. James Mabie agreed to associate themselves for the purpose of practicing medicine in Bassett. As part of Dr. Mabie's association with petitioner, an additional agreement for the sale of the subject real property for $61,662 to Dr. Mabie was executed on or about September 1, 1963. The purchase price of the clinic did not include Dr. Panzer's medical practice. Petitioner continued to use the subject property as a clinic for his medical practice after the contract of sale had been negotiated with Dr. Mabie. Dr. Mabie made payments to petitioner pursuant to the terms of the contract of sale from September of 1963 until sometime during 1966, when he left Bassett to practice medicine in Pender, Nebraska. Dr. Mabie ceased making the payments when he discontinued his association with Dr. Panzer. The contract provided in part: It is further understood that time is of the essence of this contract and that upon the failure of the Buyer to make any of the payments due on this contract within thirty days after they become due, the sellers may at their option, declare this contract forfeited and at an end and the entire purchase price shall become *70 due and payable at once without further notice. Petitioner did not institute a legal action for money damages against Dr. Mabie under the contract of sale. On or about December 1, 1968, petitioner conveyed the real property and improvements to the First United Methodist Church of Sacramento (church). Petitioner's brother was the minister of the church. Following the conveyance to the church, petitioner continued to occupy the subject clinic building and made payments to the church pursuant to the terms of a lease agreement which provided for a monthly payment of $630. Petitioner made payments to the church of $8,190 in 1969 and $5,040 for eight months of 1970. Petitioner and Mary Lou Panzer reflected the transfer of the clinic building to the church on their joint Federal income tax return for 1968 and claimed that the fair market value of the property was $63,000 on the date of the conveyance. Of the $63,000 claimed contribution, $10,513.16 was utilized on petitioners' 1968 Federal income tax return and is not in issue here. Petitioners applied $34,028.62 on their joint Federal income tax return for 1969 and the remaining $18,460.22 was utilized on their 1970 joint Federal income *71 tax return as charitable contributions. The Commissioner, in his statutory notice of deficiency, determined that the fair market value on December 1, 1968, the date of the conveyance to the church, was $25,000. He further determined that the fair rental value for petitioner's use of the clinic in 1969 and 1970 was $250 and that petitioner's rental expenses for 1969 and 1970 were $3,250 and $2,000. He also determined that the difference between petitioner'$630s monthly payment and the $250 monthly rental expense allowed, or $380 per month, was allowable as a charitable contribution for 1969 and 1970. At trial, respondent conceded that the fair rental value of the clinic during 1969 and 1970 was $400 per month. Consequently, he now contends that the unallowable portions of the rental expense claimed for 1969 and 1970 are $2,990 and $1,840, respectively, rather than $4,940 and $3,040 as set forth in the statutory notice of deficiency. ULTIMATE FINDINGS OF FACT (1) The fair market value of the medical clinic was $50,000 as of December 1, 1968. (2) The fair rental value of the medical clinic which petitioner used for his medical practice during 1969 and 1970 was $500 per month. *72 OPINION The primary issue presented for decision is the valuation of real property improved by a medical clinic contributed by petitioner to a church on December 1, 1968. An ancillary issue for decision is the monthly fair rental value of the clinic after the contribution which will determine the extent to which monthly payments to the church were business rental expenses or additional charitable contributions. Both parties offered the testimony of expert witnesses. Although both witnesses were qualified, the qualifications of respondent's witness were clearly superior. On the other hand, respondent's witness was less knowledgeable about the state of medical practice in the Bassett area. The various property values and fair rental values are as follows: Fair Rental
Property
Value per
Value
Month
Claimed on returns
$63,000 $630
Opinion of petitioners' expert
witness
60,000
none given
Determined by Commissioner in
his statutory notice of
deficiency
25,000
250
Opinion of respondent's expert
witness
25,000
400
Conceded by respondent at trial
0
400
Section 1.170-1(c), Income Tax Regs., provides the proper standard for valuation:
*73 (c) Contribution in property.-- (1) General Rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * Petitioner contends that the agreement of sale of the clinic to Dr. Mabie in September of 1963 was an arm's-length transaction and, notwithstanding Dr. Mabie's subsequent default under the contract, we should accept the sales price as an aid in deciding value under the above-quoted regulations. Respondent asserts that the contract of sale was not arm's-length on the grounds that Dr. Mabie was not acting freely when he entered into the purchase agreement contemporaneously with his agreement to associate with Dr. Panzer. Although Dr. Mabie considered going into practice with Dr. Panzer and the purchase of the building as a unit, we have no evidence that Dr. Mabie objected to or desired a form of association other than that agreed *74 upon. We agree in principle with respondent that the 4-year lapse from the sale until the contribution detracts from the weight to be accorded to the agreement and have adjusted our valuation accordingly. But, we are not disposed to reject the contract in its entirety. We also feel it improper to draw inferences from Dr. Panzer's failure to institute a legal action for enforcement of the contract. There are far too many considerations which enter into a decision to seek judicial enforcement of a contract to render such failure probative. It may well have been that Dr. Panzer considered the property to be worth more than the payments remaining to be paid. Respondent places special emphasis on his expert's recognition and petitioners' failure to recognize an obsolescence factor in determining their respective values. Except for the lack of parking facilities, we do not believe respondent's emphatic concern over obsolescence was based on any factors other than the dreary state of the building. We do believe that the passage of time, the lack of ample parking and the availability of alternative sites for the practice of medicine have reduced the value of the clinic from its contract *75 price of $61,662 to a value of $50,000. Petitioner claims that the monthly fair rental value of similar properties in Bassett is 1 percent of its fair market value. Although respondent seeks to reject the 1 percent rule of thumb, it is apparent that his expert's economic approach borders on its equivalence. Based on the entire record, we find that the monthly fair rental value of the clinic was $500. Decision will be entered under Rule 155.